Argued September 23, reversed October 22, 1952

IN THE MATTER OF THE LAST WILL AND TESTAMENT OF
MERICA NEWMAN, DECEASED.
NEWMAN *v.* STOVER
248 P. 2d 1069

*Charles H. Foster,* of Lakeview, argued the cause and filed briefs for appellant.

*Herbert P. Welch,* of Lakeview, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

This is the second appeal in this cause. As disclosed by our former opinion, it is a suit challenging the

validity of an instrument purporting to be the last will and testament of Merica Newman, deceased. *Newman v. Stover,* 187 Or 641, 213 P2d 137. The contestant is Richard Newman, her son. He attacks the will of October 15, 1947, on the grounds that it was executed as a result of undue influence and mental incompetency. The record proponent is Herbert Stover, the nominated executor. The real parties interested in sustaining the October will and who are the sources of evidence adverse to the contestant are his sister Grace and five of his brothers.

The first appeal was from an order dismissing the petition. That order was predicated upon a motion made by the proponent executor at the conclusion of contestant's case. The impropriety of such motion and order at that point in the proceeding was discussed in our first opinion; but, notwithstanding, we reviewed the contestant's evidence and concluded that he made a sufficient showing to sustain the charge that the will was executed as a result of undue influence, saying (187 Or 656): "* * * We are not prepared to say what our conclusion would be if those charged with having exercised undue influence had testified * * *." We thereupon remanded the cause with directions to permit both parties to offer additional evidence, if they cared to do so.

The parties embraced the opportunity afforded by that holding, and the instant appeal is from the circuit court's final order, following the conclusion of the second and last hearing. This order again dismissed contestant's petition.

Under the circumstances present, this opinion is, in essence, a supplement to our first opinion. It results from our first opportunity to review the record in its entirety and at this time make a pronouncement

which will terminate the litigation respecting the legal sufficiency of the decedent's purported will of October 15, 1947. For the same reasons, the second hearing following our first opinion must be viewed as a continuation of the first hearing and the record made in both hearings examined as one entire record of one complete trial.

The foregoing conclusions dictate that for a better understanding of what is hereinafter said, our first opinion should be read preliminary to a reading of this, for therein will be found a statement of facts not necessary to repeat here; and there, too, will be found references to law which presently bear upon and warrant some of the conclusions we now make.

By reference to pages 646 et seq. of the opinion on the first appeal, it will be discovered that among the factors which led to the court's conclusion that the contestant had sustained the charge of undue influence are the following: (1) The material difference between the will of September 30, 1947, and the contested will of October 15, 1947; (2) The esteem of the decedent for her favorite son Richard, predicated upon his solicitude for her during the extended period of her illness and the expenses which he bore in connection therewith; (3) The confidence which she reposed in Richard in his efforts over 15 years to recoup for her, as he did, the decedent's share of her father's Kentucky estate; (4) The bitterness which she entertained toward the rest of her children, with the exception of Con and Harry, arising out of the disposition of the Kentucky property which was the fruit of Richard's successful endeavors in her behalf; (5) The almost constant and hovering presence of her children constituting the proponents and particularly that of Diamond and Grace at the rest home while Mrs. New-

man was a patient there after October 6, 1947; (6) The greatly weakened condition of Mrs. Newman's mind and body while in that place; (7) Her nomination of Herbert Stover as the executor of the will in contest, wherein she described him as "my friend", although she had never met him; (8) The apparent collusion between Stover and Diamond to protect Diamond's property from a levy by reason of a pending lawsuit wherein Richard had sued Diamond to recover $5,600 as an alleged loan, coupled with Diamond's answer claiming that said money had been received by him from his mother, and Stover's failure to treat the loan (on that theory) as a probable asset of the decedent's estate; (9) The elimination from the contested will of any charge for "gifts" or "advancements" made to Grace, Diamond and Sam in contrast to the will of September 30, 1947; (10) The preparation of the challenged will by counsel for one of the proponent heirs and who, with his secretary, acted as an attesting witness; (11) The presence of Diamond and Grace at the will's execution; (12) The fact that on the same day the will was executed, the decedent not only filed a suit for an accounting against Richard for funds received from the Kentucky estate but on the same day cancelled the power of attorney which she had given him 15 years before to facilitate the Kentucky litigation and his subsequent handling of the property thereby acquired; (13) Mrs. Newman's deposition in the accounting suit taken while she was a patient at the rest home on November 3, 1947, wherein she extolled the generosity of her son Richard and his prompt responses to her every call when she was in need; (14) Mrs. Newman's expressed desire at that time to return to the home of Richard instead of Grace's home in Hilt, California, and Diamond's then

threats of physical violence against Richard; (15) Mrs. Newman's repeated calls for her son Richard prior to her death on November 22, 1947; (16) The rather trivial and flippant excuse decedent gave in her deposition when asked why she had filed the suit for an accounting and (17) The decedent's declaration that " 'They wouldn't let me rest 'til I signed those papers' " which, as we construed it, included reference to the contested will.

The foregoing matters not only sustain a presumption of undue influence but necessarily cast upon the defendant executor the burden of rebutting this presumption.

■ On the renewal of the trial following our first opinion, the lower court very properly treated the second hearing as a continuation of the first and resumed at the point where the first hearing had been arrested by defendant's motion for a dismissal. This last hearing began with the taking of testimony offered by defendant to overcome the case made by the contestant prior to resting and was followed by rebuttal testimony on the part of the party challenging the will's validity.

■ This status of the record leaves nothing further for us to do on this appeal except to address our attention to the later record and ascertain whether the defendant has successfully overturned the prima facie case earlier made by the contestant. We have not only carefully read the testimony adduced at the last hearing but have critically and with equal care re-examined all the evidence which came to us on the first appeal. As a result of this study, we are of the opinion that the proponents of the will of October 15, 1947, have failed to overcome the prima facie showing made by the contestant Richard Newman at the first hearing, and from

this consideration of the entire record it clearly appears that a case of undue influence has been established.

To relate again and discuss each several situation in this controversy beyond what was done on the first appeal would unduly extend this opinion and serve no useful purpose. We will, therefore confine ourselves to a generalization of the testimony adduced at the last hearing.

The entire record presents a background of family feuding with evidence of selfishness, bitter vituperation, criminations and recriminations on the part of individual children of the family in their relations with each other. It is replete with manifestations of real and pretended filial devotion toward their mother which, in the main, are supported by self-serving declarations of the interested parties. Envy, jealousy and unmerited suspicion of their brother Richard, bolstered by misinformation concerning his activities in his mother's behalf, appear to be largely accountable for the alliance that existed between his sister Grace and the five brothers who joined with her as proponents of the challenged will. From this welter of passion, prejudice and self-interest it is extremely difficult to winnow the grains of fact from the chaff of fiction and fancy and resolve from the resultant grist an answer which will be universally accepted as satisfactory and convincing.

Our task was made even more difficult by the presence of an abundant amount of hearsay testimony adduced at the second hearing. It comes principally from the lips of the proponents who, in their effort to discredit the standing of their brother Richard in their mother's esteem, resort glibly and frequently to reputed expressions by her which on proper motion should have been stricken. In addition to what was

said in our first opinion concerning declarations credited to a decedent (187 Or 655), we call attention to our most recent statement on this subject in the case of *Shepard et ux. v. Purvine et al.,* — Or. — where will be found a summary of the limited occasions when the declarations of a deceased person are admissible, together with a reference to the statutory sections giving warrant for these deviations from the hearsay rule.

We have, however, leaned more heavily upon the higher probative quality of the decedent's deposition given shortly after the making of the October will and a few weeks before her death in the same month, wherein she pays high tribute to and displays great confidence in her son Richard and wherein she proclaims him "straight as a line", rather than rely upon the hearsay testimony of his adversary sister and brothers who, through that avenue, credit their mother with uncomplimentary remarks concerning Richard and "his bunch" and her alleged fear of him.

The record contains some references to Mr. Forrest Cooper, the attorney who drafted and was a witness upon the September will, and to Mr. Robert L. Welch, who functioned in the same manner respecting the will of October, vaguely insinuating that their conduct in their respective relationships to the decedent might not have been in strict accord with the highest standards of their profession. We feel that, under the circumstances, it is appropriate for us to observe that we find absolutely nothing in the matter before us to warrant any unfavorable imputations as to either of them.

The decree in this matter will be reversed. Contestant is entitled to costs and disbursements.